IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0133-05






JAMES PLAMON McNATT, II, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


HUNT COUNTY





 Keller, P.J., delivered the opinion of the Court in which, PRICE,
WOMACK, KEASLER, HERVEY, HOLCOMB and COCHRAN JJ., joined. 
MEYERS, J., dissented. JOHNSON, J., concurred in the result. 





 Appellant's sentence was reversed on appeal, after the Court of Appeals found that the State
failed to give appellant proper notice of its intent to use a prior conviction for enhancement purposes. 
The case was remanded for a new trial on punishment only. We granted review to determine
whether the State is prohibited on remand from giving the requisite notice and using the conviction
for enhancement purposes at the new punishment hearing. We hold that there is no such prohibition. 


I. BACKGROUND


A. Trial


 Appellant was indicted on October 11, 2002, for the felony offense of driving while
intoxicated (DWI) after having been previously convicted of DWI on two or more occasions. The
indictment alleged that the primary DWI was committed on November 18, 2001. In addition, the
indictment alleged eight jurisdictional priors. Finally, the indictment alleged two prior convictions
for the purpose of enhancement (occurring on January 19 and 26, 1983). However, because the
second enhancement offense was not committed after conviction for the first became final, the
convictions counted as only one conviction for the purpose of determining the range of punishment
under the enhancement statute - raising the punishment range from that of a third degree felony (2
to 10 years of imprisonment) to that of a second degree felony (2 to 20 years of imprisonment). (1) 

 The case was set for trial on March 17, 2003. On March 5, 2003, pursuant to Tamez v. State, (2)
appellant agreed to stipulate to two of the jurisdictional priors (both misdemeanors) in order to
prevent the introduction of the other six prior DWI convictions at the guilt phase of trial. On March
6, 2003, the State filed a letter conveying its notice of intent "to prosecute [appellant] as a habitual
offender." The letter informed appellant that he would be facing a punishment range of 25 years to 
life and that, in addition to the two enhancement convictions listed in the indictment, the State would
rely upon a 1982 felony DWI conviction that was not listed in the indictment. 

 On March 7, 2003, the State filed an unsworn motion for continuance, alleging that a
continuance was necessary because: 1) the State had discovered an additional prior felony conviction
that could be used to enhance the punishment range to 25 years to life in prison, (2) appellant had
used two aliases and might have drivers' licenses under those names in Arkansas, Louisiana, and
California and thus might have additional convictions under those aliases, and (3) the State had
retained two expert witnesses who were not available during the week the case was set for trial but
would be available during the week of April 21st. Appellant opposed the motion for continuance on

the grounds that it was unsworn in violation of Article 29.08, (3) was untimely in violation of Article
28.01, and failed to set forth sufficient cause for continuance under Articles 29.03 and 29.04. He
also complained that his own expert witness was already scheduled for a different case on the week
of April 21st. The trial court denied the State's motion for continuance, but granted some leeway in
the timing of the trial to accommodate the State's experts. Jury selection was conducted on Monday,
March 17th. A motion-to-suppress hearing was held and opening statements were made on
Wednesday, March 19th, and witness testimony began on Thursday, March 20th. 

 On March 24th, the day before sentencing, the trial court ruled that the State could not use for
enhancement the 1982 felony DWI conviction pled in the March 6 notice because the notice was
untimely. The next day, the State requested that the trial court reconsider its ruling and also
requested permission to use a 1987 felony DWI conviction that was pled as one of the jurisdictional
priors in the indictment. The trial court adhered to its earlier ruling excluding the use the 1982
conviction, but it ruled that the State would be permitted to use "convictions noted in the
indictment." The State subsequently used the 1987 felony DWI conviction to enhance the range of
punishment to 25 to 99 years or life. (4) Appellant was sentenced to 99 years in prison. 

B. Appeal


 The Court of Appeals agreed with appellant's contention that the State failed to give
sufficient notice of its intent to use the 1987 felony DWI conviction for enhancement under §12.42. (5) 
The appellate court found that this failure of notice constituted a violation of the constitutional right
of due process. (6) Conducting a harm analysis for constitutional error, (7) the Court of Appeals declined
to find the error harmless. The court reversed the assessment of punishment and remanded the case
for a new punishment hearing. (8)

 In addition, the Court of Appeals instructed that the State would not be allowed to cure the
notice problem on remand by giving notice before the new punishment hearing; rather, the State
would be limited to using the prior (non-sequenced) convictions set out for enhancement purposes
in the indictment. (9) As a result, instead of seeking a sentence in the punishment range of 25 to 99
years or life under §12.42(d), the State would be limited to seeking a sentence in the punishment
range of 2 to 20 years under §12.42(a)(3). (10) Relying upon Musgrove v. State, (11) the Court of Appeals
reasoned:

When a court of appeals reverses and remands a case to the trial court without
instructions to render a specific judgment, the effect is to restore the parties to the
same situation as that in which they were before the appeal. Before the appeal, the
enhancement notice to McNatt was insufficient to enhance his sentence beyond a
maximum of twenty years' confinement. On remand, that limitation remains. (12)


 In a footnote, the Court of Appeals responded to a contention made in a concurring opinion
in Sears v. State (13) that Article 37.07 would permit use of the conviction for enhancement on
remand. (14) The court below observed that, while Article 44.29, the remand statute, directs the trial
court to proceed under Article 37.07 and the latter statute "authorizes proof of prior convictions as
a relevant consideration in the assessment of punishment," the court expressed its belief that such
authorization "falls short of authorizing sentence enhancement beyond the range of punishment
authorized by proper prior notice of intent to enhance punishment." (15) The court further stated that
it would "not apply Article 37.07 in a manner inconsistent with a defendant's right to due process." (16)

 In its petition, the State complains only about the Court of Appeals's pronouncement that the
State will be precluded on remand from using a second prior conviction to enhance appellant's
punishment under §12.42(d). (17)

II. ANALYSIS
 

 The rationale for the Court of Appeals's holding is not clear. The court did not indicate the
source of its rule other than to cite Musgrove, another court of appeals opinion. Musgrove, in turn,
cited Film Adver. Corp. v. Camp, (18) a court of appeals opinion in a civil case, (19) which cited no
authority for its pronouncement. (20) At any rate, having been handed down by intermediate appellate
courts, neither decision is binding upon this Court. What we must ultimately determine today is
whether the remand statute or due process requires the result reached by the Court of Appeals. 

 We interpret a statute in accordance with the plain meaning of its text unless the statutory
language is ambiguous or the plain meaning leads to absurd results that the Legislature could not
have possibly intended. (21) The remand statute provides in relevant part:

If the court of appeals . . . awards a new trial to a defendant . . . only on the basis of
an error or errors made in the punishment stage of trial, the cause shall stand as it
would have stood in case the new trial had been granted by the court below, except
that the court shall commence the new trial as if a finding of guilt had been returned
and proceed to the punishment phase under Subsection (b), Section 2, Article 37.07,
of this code. If the defendant elects, the court shall empanel a jury for the sentencing 
stage of trial in the same manner as a jury is empaneled by the court for other trials
before the court. At the new trial, the court shall allow both the state and the
defendant to introduce evidence to show the circumstances of the offense and other
evidence as permitted by Section 3 of Article 37.07 of this code. (22)


We initially analyze two clauses of the language italicized above: the "stand" clause and the "except"
clause. 

 The "stand" clause provides that granting a new trial "for punishment only" causes the case
to stand as if "the new trial had been granted by the court below." The language "the new trial had
been granted by the court below" is a reference to the trial court's power to grant a new trial, and
the effect of such a grant is addressed by the rules of appellate procedure. Rule 21.9 provides,
"Granting a motion for new trial restores the case to its position before the former trial, including,
at any party's option, arraignment or pretrial proceedings initiated by that party." (23) By including
"arraignment" and "pretrial proceedings" in the matters that may be repeated, the rule recognizes that
a new trial restores the case not merely to the beginning of trial, but much earlier, to the beginning
stages of the prosecution. (24) This language is broad enough to embrace the State's notice pleadings,
including a notice of intent to use a prior conviction for enhancement purposes. 

 The next question is what modification the "except" clause makes to the effect of granting
a new trial. The statute says, "except that the court shall commence the new trial as if a finding of
guilt had been returned." This language clearly provides that the "new trial," whenever it starts, will
start as if the defendant had already been found guilty. The language does not negate the fact that
reversal returns the parties to a position long before the new trial actually begins.

 With regard to due process, the Supreme Court has held that "an habitual offender charge 
. . . is 'essentially independent' of the determination of guilt on the underlying substantive offense." (25) 
While "a defendant must receive reasonable notice and an opportunity to be heard relative to the
recidivist charge," if the recidivist charge is the subject of a separate proceeding, "due process does
not require that notice be given prior to the trial on the substantive offense." (26)

 Moreover, other contexts suggest indirectly that lack of notice at an earlier trial should not
bar the use of an enhancement at a later proceeding. In Welch v. State, the enhancement allegation
was read to the jury after testimony was taken and was thus read untimely. (27) We characterized the
issue as one of "trial error" and held that "the State is not prohibited from pursuing enhanced
punishment again in the event of retrial." (28) In Hood v. State, the State pursued enhancement
allegations on retrial even though no such allegations had been pursued at the first trial. (29) We held
that "mistake or oversight" in failing to pursue the allegations at the first trial could be an "objective
reason" that would defeat a constitutional claim of prosecutorial vindictiveness. (30) Finally, in
Lockhart v. Nelson, a federal district court determined on habeas corpus that a prior conviction
offered in support of an enhancement allegation was unusable for that purpose because the offense
had been pardoned. (31) The State of Arkansas then announced its intention to resentence the defendant
as a habitual offender, using a different conviction, not offered or admitted at the initial sentencing
hearing. (32) Assuming arguendo that the Double Jeopardy Clause applied to a State's attempt to use
prior convictions for enhancement at a noncapital sentencing proceeding, the Supreme Court held 
that use of a different conviction to prove habitual status did not constitute a double jeopardy
violation. (33) 

 We conclude that the Court of Appeals erred in holding that the untimeliness of an
enhancement allegation carries over to any retrial of the punishment proceedings. As long as the
enhancement is not barred by other considerations (e.g. prosecutorial vindictiveness), the State is free
to use a prior conviction for enhancement if proper notice of its intent to do so is conveyed with
respect to the new punishment hearing.

 The judgment of the Court of Appeals is reversed to the extent that it prohibited the State
from using prior convictions for enhancement at the new punishment hearing. In all other respects,
the judgment of the Court of Appeals is affirmed.

 Keller, P.J.

Date delivered: March 29, 2006

Publish
1. See Tex. Pen. Code §49.09 (DWI with two prior DWIs is third degree felony);
12.42(a)(3), (d)(enhancement with prior convictions). See also §§12.33 (second degree felony
punishment range) and 12.34 (third degree felony punishment range).
2. 11 S.W.3d 198 (Tex. Crim. App. 2000).
3. All references to articles are to the Texas Code of Criminal Procedure unless otherwise
indicated.
4. See §12.42(d).
5. McNatt v. State, 152 S.W.3d 645, 649-653 (Tex. App.-Texarkana 2004). 
6. Id. at 653.
7. See Tex. R. App. P. 44.2(a).
8. McNatt, 152 S.W.3d at 653.
9. Id. at 656.
10. See id. at 648 n. 2, 656.
11. 82 S.W.3d 34, 37 (Tex. App.- San Antonio 2002, pet. ref'd).
12. McNatt, 152 S.W.3d at 656 (citation and footnote reference omitted).
13. 91 S.W.3d 451, 456 (Tex. App.-Beaumont 2002)(Walker, C.J., concurring).
14. McNatt, 152 S.W.3d at 656 n. 10.
15. Id. at 656 n. 10 (emphasis in original).
16. Id.
17. Consequently, we express no opinion on whether notice was in fact untimely.
18. 137 S.W.2d 1068, 1069 (Tex. Civ. App.--Dallas 1940, no writ).
19. 82 S.W.2d at 37 (citing Film Adver. Corp.).
20. Film Adver. Corp., 137 S.W.2d at 1069. Ironically, the entire passage in Film Adver.
Corp. suggests an opposite conclusion than the one drawn by the Court of Appeals in the present
case:


When a cause is reversed and remanded for a new trial, generally, without
instructions to render a specific judgment, as in the first appeal of this cause, the
effect is to restore the parties litigant to the same situation as that in which they
were prior to the appeal; the parties are allowed to proceed in the court below, and
have their rights determined in the same manner and to the same extent as if their
cause had never been heard or decided by any court, leaving the trial court
entirely free to exercise his own judgment upon the evidence reviewable on
appeal, as in the first instance. 


Id.
21. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).
22. Art. 44.29(b).
23. Tex. R. App. P. 21.9
24. The rule existed with substantially the same wording before the statutory change that
authorized reversal and remand for a new trial on punishment only. See Tex. R. App. P. 32 (West
1986); Acts 1987, 70th Leg., ch. 179, §1 (amending Art. 44.29).
25. Oyler v. Boles, 368 U.S. 448, 503 (1962)(citing Chandler v. Fretag, 348 U.S. 3, 8
(1954)). For this reason, we reject the claim advanced by defense counsel during oral argument
that the enhancement allegation, by changing the range of punishment, frustrated appellant's
ability to intelligently conduct plea negotiations and that giving notice before a new punishment
hearing would not remedy that injury. 
26. Id. 
27. 645 S.W.2d 284 (Tex. Crim. App. 1983).
28. Id. at 286.
29. ___ S.W.3d ____, 2006 Tex. Crim. App. LEXIS 13 (January 18, 2006).
30. Id. at *13; see also Lopez v. State, 928 S.W.2d 528, 532-533 (Tex. Crim. App.
1996)(intervening judicial decision permitting use of deadly weapon finding for "unknown
object" allegations was sufficient to rebut presumption of vindictiveness, thus allowing State to
seek deadly weapon finding at second trial when one was not sought at first trial).
31. 488 U.S. 33, 36 (1988).
32. Id. at 37.
33. Id. at 291-292.